IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMONT ADAMS, | : | CIVIL ACTION |
| Petitioner, | : | NO. 06-966 |
| v. | : | |
| JOHN A. PALACKOVICH, et al., | : | |
| Respondents. | : | |

**ORDER AND MEMORANDUM**

AND NOW, this 1st day of June, 2007, upon consideration of Petitioner Lamont Adams' Petition for Writ of Habeas Corpus (Docket No. 1), Respondents' Response to the Petition for Habeas Corpus (Docket No. 9), the Report and Recommendation of Magistrate Judge Thomas J. Rueter (Docket No. 10), Petitioner's Objections and Supplemental Objections to the Report and Recommendation (Docket Nos. 16 and 18), Petitioner's Supplemental Motion to Expand the Record and Exceptions to the Magistrate's Report (Docket Nos. 26-32), Respondents' Response to this Court's Order Dated December 12, 2006 (Docket No. 33), and Respondents' Response to Petitioner's Supplemental Motion to Expand the Record and Exceptions to the Magistrate's Report (Docket No. 37), it is hereby ORDERED, for the reasons that follow, that:

(1)   the Report and Recommendation is APPROVED and ADOPTED;

(2)   the Petition for a Writ of Habeas Corpus is DISMISSED; and

(3)   a certificate of appealability is <u>not</u> granted.

It is further ORDERED that all outstanding motions are DENIED as MOOT.

The issue considered and determined by this court is whether Petitioner's untimely habeas petition is subject to equitable tolling. On December 12, 2006, the court *sua sponte* ordered the parties to develop the record on the issue of equitable tolling, pursuant to Rule 7 Governing Section 2254 Cases in the United States District Courts, and shortly thereafter appointed counsel to represent Petitioner as to that issue. After careful consideration of the parties' responses to the prior order, the court finds that the applicable statute of limitations is not subject to equitable tolling and Petitioner's petition for a writ of habeas corpus is time barred.

**1.    Background**

The factual background, procedural history, and applicable legal standards pertaining to this matter are described in the Report and Recommendation, which is incorporated herein, and will not be here reiterated in detail. It is undisputed that Petitioner filed his habeas corpus petition 54 days after the expiration of the one-year statute of limitations period under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). Petitioner argues for the application of equitable tolling because his several transfers and prolonged detention in the Restrictive Housing Unit ("RHU") without his legal materials or access to legal research presented extraordinary circumstances that prevented him from timely filing his habeas petition. Petitioner avers that he was unable to calculate correctly the deadline for filing his habeas petition without his legal materials. (Pet'r Supp'l Mot. ¶ 7.h.)

On July 15, 2001, the one-year statute of limitations period under AEDPA began to run when the time for seeking *certiorari* in the U.S. Supreme Court ended and Petitioner's judgment became final. See Commonwealth v. Adams, 781 A.2d 137 (Pa. 2001) (Table). On October 29,

2001, after 106 days of the limitations period had run, Petitioner filed a timely petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq. The limitations period was statutorily tolled while his petition for state collateral relief was pending. See 28 U.S.C. § 2244(d)(2).

During this period of statutory tolling, on July 31, 2004, Petitioner was placed in the RHU at SCI-Greene. (See Pet'r Supp'l Mot. Ex. A & Ex. C.) On that date, Petitioner alleges that prison officials took all his legal materials, including drafts of his habeas petition, and never returned them. (Pet'r Supp'l Mot. ¶¶ 7.b. & 7.d.) Petitioner was then held in the RHU at SCI-Greene until his transfer on February 8, 2005 to SCI-Forest. (Pet'r Supp'l Mot. Ex. C.) Upon arrival at SCI-Forest, he was again placed in the RHU until April 28, 2005. (Id.)

On April 19, 2005, while Petitioner was in the RHU in SCI-Forest, the Pennsylvania Supreme Court denied Petitioner's *allocatur* petition on collateral review and the limitations period began to run again, with 259 days remaining for Petitioner to file a timely habeas petition. See Commonwealth v. Adams, 872 A.2d 1197 (Pa. 2005) (Table). Petitioner spent much of this period in RHU. Several weeks after being released from RHU on April 28, 2005, Petitioner was again placed in RHU in SCI-Forest on May 17, 2005. (Pet'r Supp'l Mot. Ex. C.) He remained there until September 20, 2005, when he was transferred from SCI-Forest to SCI-Smithfield. (Id.) Upon his arrival at SCI-Smithfield, Petitioner continued to be placed in RHU until November 9, 2005. (Id.) After his release from RHU on November 9, 2005, approximately 55 days, or about 8 weeks, remained for Petitioner to file a timely habeas petition by January 3, 2006, when the limitations period ended.

Petitioner filed his untimely habeas petition on February 26, 2006. Petitioner maintains

that he was at all times without legal materials.[1]  (Pet'r Supp'l Mot. ¶ 7.f.)  Petitioner argues he could not have filed a timely placeholder petition because he needed the help of a legal assistant to do so but was not permitted such assistance during his prolonged placement in RHU.  (Pet'r Supp'l Mot. ¶ 7.g.)

**2.     Discussion**

    a.     **Applicable Law and Standard of Review.**

The Third Circuit has held that AEDPA's statute of limitations is subject to equitable tolling.  LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005) (citing Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998)).  The time for filing a habeas petition may be equitably tolled if petitioner shows that (1) respondent has actively misled the petitioner; (2) the petitioner has in some extraordinary way been prevented from asserting his or her rights; or (3) the petitioner has timely asserted his or her rights in the wrong forum.  Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (quoting Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999)), cert. denied, 534 U.S. 944.  The second prong is at issue here.

Equitable tolling is allowed "only in the rare situation where . . . [i]t is demanded by

> sound legal principles as well as the interests of justice . . . [and] only
> when the principles of equity would make the rigid application of a
> limitation period unfair.  Generally, this will occur when the petitioner has
> in some extraordinary way been prevented from asserting his or her rights.
> The petitioner must show that he or she exercised reasonable diligence in
> investigating and bringing the claims."

---

[1] Petitioner provided this response to the court's request for information concerning "[w]hat legal materials, if any, Petitioner had available to him at the approach of his filing deadline and whether they were sufficient to prepare the habeas petition."

Schlueter v. Varner, 384 F.3d 69, 75-76 (3d Cir. 2004) (citations and quotations omitted), cert. denied, 544 U.S. 1037 (2005); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

The petitioner bears the burden of proof as to all facts, procedural and substantive, demonstrating entitlement to relief. Brown v. Cuyler, 699 F.2d 155, 158 (3d Cir. 1982). "Mere excusable neglect is not sufficient." Miller, 145 F.3d at 619. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

b.  **No Extraordinary Circumstances Prevented Petitioner from Filing a Timely Habeas Petition.**

Petitioner has not met his burden to show that extraordinary circumstances prevented him from timely filing his habeas petition. First, Petitioner's alleged missing legal materials ultimately did not prevent Petitioner from filing his habeas petition, albeit untimely. "Where a petitioner is ultimately able to file his habeas petition, with or without having received replacement materials, the deprivation of legal documents does not justify equitable tolling." Satterfield v. Johnson, 434 F.3d 185, 196 (3d Cir. 2006); see Robinson v. Johnson, 313 F.3d 128,

142 (3d Cir. 2002) (finding that petitioner's filing of an untimely habeas petition without the benefit of his missing legal papers suggested, if not demonstrated, that they were not necessary to the filing).

In addition, despite Petitioner's averment that he was at all times without legal materials, (Pet'r Supp'l Mot. ¶ 7.f.), Petitioner's untimely habeas petition outlines in detail the complete procedural history of Petitioner's case, including information necessary to calculate the limitations period deadline.[2]  Either Petitioner had committed this information to memory or he was able to access or replace his legal materials subsequent to the alleged confiscation of his legal materials.  In either case, Petitioner should have been able to correctly calculate the filing deadline and file a timely habeas petition.  Even if Petitioner were only able to access or replace his legal materials after the filing deadline, there is no evidence that he exercised reasonable diligence to obtain the legal materials to file timely his habeas petition, as discussed below. Petitioner's filing of his habeas petition, with or without replacement materials, and inclusion of information necessary to ascertain the filing deadline, demonstrates that the alleged deprivation of his legal materials did not constitute an extraordinary circumstance.  See Satterfield, 434 F.3d at 196.

Second, Petitioner has not presented evidence in corroboration of his claims that any of the institutions where he was held in RHU had a policy of removing legal materials or denying access to legal research.  The Pennsylvania Department of Correction's Administrative Custody

---

[2] His habeas petition includes the following: that on April 16, 2001 the Pennsylvania Supreme Court denied *allocatur* on the affirmance of Petitioner's conviction; that he did not seek *certiorari* to the U.S. Supreme Court; that he filed a PCRA petition; and that on April 19, 2005 the Pennsylvania Supreme Court denied *allocatur* on the affirmance of the dismissal of his PCRA petition.

Procedures, Inmate Discipline Policy, and Access to Provided Legal Services Policy, as well as the Inmate Handbooks for SCI-Greene, SCI-Forest, and SCI-Smithfield, allow RHU inmates access to their legal materials and the law library. (Resp't Resp. to Ct. Order Ex. B at ¶¶ F.1.e., f., h., Ex. C at ¶¶ M.5.-7, Ex. E at ¶ B, Ex. F.)

Although Petitioner correctly asserts that RHU inmates cannot receive assistance from Inmate Legal Reference Aids (Pet'r Supp'l Mot. Ex. F at ¶ G.3.f.), Petitioner has not established that this presents an extraordinary circumstance. Petitioner was able ultimately to file his untimely habeas corpus petition without the assistance of an Inmate Legal Reference Aid. Moreover, regardless of his placement in RHU, Petitioner apparently did not meet the eligibility requirements for assistance from an Inmate Legal Reference Aid according to prison policy. (Resp't Resp. to Ct. Order, Access to Provided Legal Services Policy, Ex. E at ¶ E.2. (providing that to be eligible for paralegal assistance an inmate must be illiterate, lacking the skills or comprehension to speak or understand English in its written form, or have a disability that substantially interferes with his ability to use or understand legal materials); Resp't Resp. to Ct. Order, Denial of Grievance No. 146380-06, Ex. G (stating that the guideline for illiteracy is less than an eighth grade reading level and concluding that Petitioner did not qualify for paralegal assistance).)

Finally, Petitioner also argues that he was unable to file his petition timely because he was transferred twice, which caused him to be "bereft of [his] original case materials." (Mem. of Law in Supp. of Pet'r Supp'l Mot. 6.) Petitioner has not presented evidence of a prison policy that would permanently deprive inmates of their legal materials during transfer. Instead, the record demonstrates that prisoners' personal property, including their legal materials, follows

them upon transfer.  (Resp't Resp. to Ct. Order, Ex. D at ¶ J.1.)

Even if Petitioner were temporarily deprived of his legal materials during transfer, Petitioner's transfer twice over the course of one year in 2005, from SCI-Greene to SCI-Forest and then to SCI-Smithfield, with over three months remaining from the time of the last transfer to the filing deadline, does not constitute extraordinary circumstances.  Three months is more than sufficient time to obtain legal materials and prepare a habeas petition.  See Shannon, 322 F.3d at 774 (finding that one month was enough for a petitioner to prepare and file "a basic pro se habeas petition").

The present case is unlike two cases cited by Petitioner in support of his argument, Valverde v. Stinson, 224 F.3d 129, 133-35 (2d Cir. 2000) and Roy v. Lampert, 455 F.2d 945 (9th Cir. 2006).  In Valverde, the Second Circuit remanded the case for factual development on the equitable tolling issue where the petitioner filed his habeas petition twelve days late.  224 F.3d 136-37.  In that case, the petitioner submitted an unrebutted, sworn affirmation stating that a correction officer confiscated his legal papers, including the sole and final draft of his habeas petition, shortly before his filing deadline.  Id. at 133-35.  Here, Petitioner was not deprived of his legal materials shortly before his filing deadline.  Rather, Petitioner had well over a year after the alleged confiscation of his legal materials to prepare and file a timely habeas petition.  As discussed below, even assuming that Petitioner was deprived of his legal materials during the entirety of his confinement in RHU, the nearly eight weeks remaining between his release from RHU and the expiration of the limitations period was sufficient time to prepare and file a timely petition.  See Shannon, 322 F.3d at 774.

In Roy, the Ninth Circuit remanded the case for an evidentiary hearing on equitable

tolling where petitioners had been transferred to an Arizona prison with an inadequate law library, consisting of "only three outdated legal books, which contained no information about AEDPA." 465 F.2d at 952. This case presents no such allegations and the record suggests that Petitioner had access to a law library even while in RHU.

### c. Petitioner Did Not Exercise Reasonable Diligence.

Even assuming *arguendo* that Petitioner was deprived of his legal materials on July 31, 2004, Petitioner has not presented any evidence that he acted with reasonable diligence to obtain his legal materials and timely file his habeas petition when he had well over a year to do so before the January 3, 2006 deadline. There is no evidence that petitioner made any attempts to obtain copies of his legal materials from other sources. As discussed above, Petitioner has not presented any evidence that prison policies would have prevented him as an RHU inmate from accessing his legal materials or the law library.

Despite Petitioner's history of filing numerous grievances during his incarceration, there is no evidence that Petitioner filed any grievances relating to his missing legal materials until after he filed his untimely habeas petition and nearly two years after they allegedly were confiscated. (See Pet'r Supp'l Mot. Ex. E; Resp't Resp. to Ct. Order Ex. G & Ex. H.) Grievances presented by Petitioner which were filed prior to Petitioner's habeas petition relate to the Petitioner's complaints about mail tampering and do not mention the alleged missing legal materials. (See id.)

A grievance dated March 14, 2006 (No. 146380-06) and filed after Petitioner filed his habeas petition on February 26, 2006, is the first to raise the issue of legal assistance. (Grievance

No. 146380-06, Pet'r Supp'l Mot. Ex. E; Resp't Resp. to Ct. Order Ex. G.)  In this grievance, Petitioner states that he is "facing 'time bar' next month (April) [sic]" and complains that he has been denied access to legal assistants.  (Id.)  This statement may be consistent with Petitioner's claim that he was unable to correctly calculate his filing deadline because he did not have his legal materials.  However, it also is consistent with the possibility that Petitioner had access to the necessary information but simply miscalculated the deadline, which does not justify equitable tolling.[3]

The only grievance that addresses Petitioner's alleged missing legal materials is dated September 8, 2006 (No. 163461-06), with an appeal dated September 24, 2006.  (Grievance No. 163461-06, Pet'r Supp'l Mot. Ex. E; Resp't Resp. to Ct. Order Ex. G.)  Petitioner filed this grievance more than eight months after the habeas deadline, and only after Respondent's response to his habeas petition and the Report and Recommendation to dismiss his habeas petition as time-barred were filed.  Petitioner's claims in this grievance are: that all of his legal documents in his cell were taken while at SCI-Greene; that he was informed that he was not allowed any legal documents; that all of his legal documents were again taken at SCI-Forest; that he filed an unanswered grievance regarding his legal documents on the day that he was transferred from SCI-Forest to SCI-Smithfield; that he spoke with prison officials at SCI-Greene, SCI-Forest, and SCI-Smithfield about his missing legal materials; and that as a result of being deprived of his legal materials his habeas petition was challenged as untimely.  (Id.)

---

[3]  From Petitioner's own statement, it appears that Petitioner may have calculated the limitations period as running one year from the date of April 19, 2005, when the Pennsylvania Supreme Court denied *allocatur* on the dismissal of his PCRA petition.  It appears he may have neglected to account for the previous 106 days of the limitations period that had run between his judgment becoming final and his filing of the PCRA petition.

Petitioner has not presented any evidence of the oral or written grievances referenced in his September 8, 2006 grievance. Petitioner does not reconcile inconsistencies between his statement that he was at all times without legal materials since the alleged confiscation at SCI-Greene, and the statement in this grievance that his legal materials were taken again later at SCI-Forest. (Compare id. with Pet'r Supp'l Mot. ¶ 7.f.)

Petitioner waited until well after his filing deadline to file a grievance about his legal materials, which allegedly had been taken over two years earlier. Petitioner's failure to file grievances within a reasonable period of the alleged deprivation of his legal materials demonstrates a lack of reasonable diligence.

Assuming *arguendo* that Petitioner was deprived of his legal materials as of July 31, 2004 and could not have obtained them while in RHU, Petitioner has not presented any evidence that he exercised reasonable diligence to obtain those legal materials, ascertain his filing deadline, and timely file his habeas petition in the nearly eight weeks – between November 9, 2005 and January 3, 2006 – that he was not held in RHU prior to his filing deadline. Eight weeks was sufficient time to ascertain the filing deadline and file a timely habeas petition, and, at the very least, to file a placeholder petition. See Shannon, 322 F.3d at 774 (finding that nearly one month was enough for a petitioner, "acting with reasonable diligence, to prepare and file at least a basic pro se habeas petition"). Again, there is no evidence that petitioner filed grievances to obtain his alleged missing legal materials during this time. In addition, Respondents have presented unrebutted evidence that from November 19, 2005 to December 18, 2005, Petitioner signed up for the library seven times, but did not appear for five of those appointments. (Resp't Resp. to Ct. Order Ex. I.) This further demonstrates that Petitioner failed to exercise reasonable diligence

to file timely his habeas petition.

Petitioner has not met his burden to show that extraordinary circumstances prevented him from filing a timely habeas petition. See Schlueter, 384 F.3d at 75-76; Cuyler, 699 F.2d at 158; Shannon, 322 F.3d at 773 (quoting Valverde, 224 F.3d at 134). Even if extraordinary circumstances existed, Petitioner has failed to show that he exercised reasonable diligence in attempting to file after the extraordinary circumstances began. Any extraordinary circumstances thus did not prevent the timely filing of his habeas petition. See id. Petitioner's habeas petition is therefore time barred.

BY THE COURT:

     S/ James T. Giles    
                     J.